Bobert C. Meade, J.
The plaintiffs allege that at their request the defendant Paramount Moving & Storage Uo., Inc., agent for codefendant United Van Lines, Inc., furnished them with an estimate for the cost of moving home furnishings and goods from Bayside, New York, to Hollywood, Florida. The dates for the requested services were packing on August 27, 1970, loading on August 28, 1970, and delivery between August 81 and September 5,1970. The estimated cost was established and *194 a deposit of $10 made by plaintiffs. Following thereon, plaintiffs’ oral request for performance of the services was acknowledged in writing as scheduled for the date requested and an order number assigned by defendant United Van Lines, through its agent, the codefendant herein. On the request packing date the plaintiffs allege that repeated calls to Paramount finally resulted in a statement that no assurance of any service within a three-day period could be given. The plaintiffs thereupon retained the services of another mover at an additional cost of $345. Finally plaintiffs allege that defendants willfully and maliciously “ overbook,” knowing of their inability to perform, which course of conduct not only injured plaintiffs but also injures the general public, for which punitive damages are sought in the amount of $50,000.
Defendants move for an order pursuant to CPLR 3211 (subd. [a], par. 7) dismissing the complaint on the ground that it does not state a cause of action.
Part ÍI of the Interstate Commerce Act (U. S. Code, tit. 49, § 301 et seq.) established a comprehensive plan for the regulation of carriers of goods in interstate commerce. Included in this act is a description of the powers and duties of the Interstate Commerce Commission. The effect of an exercise of these delegated powers is described in Hughes Transp. v. United States (121 F. Supp. 212, 228) as follows:
‘ ‘ Transportation contracts, like contracts for services in most of the other states or federally regulated industries, such as communications and power and light, etc., are fundamentally different from the ordinary contract in that the respective duties of the contracting parties are carefully defined by statute, and their rights — indeed, their very freedom to contract in certain respects — are strictly limited by those statutes regardless of the parties’ knowledge of those restrictions or of their manifest desire to contract otherwise.” (Italics supplied.)
Effective May 1,1970, the I.C.C. issued rules governing household goods carriers, in Ex Parte No. MC-19 (Sub-No. 8), Part 1056, entitled “ Transportation of Household Goods in Interstate or Foreign Commerce,” sections 1056.1 through 1056.18. (Code of Fed. Reg., tit. 49, §§ 1056.1-1056.18.) Those rules include in section 1056.7 a requirement that every carrier give to a prospective shipper an informational booklet entitled “ Summary of Information for Shippers of Household Goods.” This was done by defendants in this case. The information contained in this booklet is based upon promulgated rules of the I.C.C. and its issuance to prospective shippers is intended to alert them to the requirements of the said commission.
*195 Among the rules that apply to the facts alleged in the complaint are the following:
(a) An estimate of charges must be provided by carriers but is binding on neither shipper nor carrier (§ 1056.8);
(b) An order for service shall be prepared by a carrier prior to a receipt of shipment, and signed by both shipper and carrier (§ 1056.9); and
(c) A receipt or bill of lading must issue from the carrier when the household goods are received (§ 1056.10).
In the instant case neither an order for services nor a bill of lading’ issued, nor was a request for either made by plaintiffs. The letter of defendants acknowledging and scheduling plaintiffs’ order is not a substitute for an order for services, since much of the information and data required by this rule of the LC.C. is not provided. Absent a required bill of lading or receipt, as is true here, there is again a failure in supplying that information and data deemed necessary by the I.C.C. in its regulatory activity. It appears clear to this court that the IvC.C., in recognition of the responsibilities placed upon it by the Congress, has undertaken to establish comparatively definitive rules for the regulation of common carriers such as defendants. If such rules are to achieve their purpose, they must bind both shipper and carrier. They do limit the freedom of parties to contract. In the instant case these very rules precluded the possibility that a contract arose between the parties as shippers and carrier. Even the most liberal interpretation of the allegations of the complaint falls short of establishing that basis needed to deny defendants’ motion to dismiss the complaint. The motives of defendants, alleged by plaintiffs as willful, malicious and reckless, do not alter the fact that there has been no violation by defendants of any contractual obligation.
In the 1 ‘ Summary of Information for Shippers of Household Goods,” issued by the I.C.C., section 1056.7 of part 1056, which, as noted above, was given plaintiffs, the following appears:
‘ ‘ WHEU WILL, THE SHIPMENT BE PICKED UP ?
“ Movers are required to transport shipments with reasonable dispatch. The term reasonable dispatch means the performance of transportation on the dates or during the period of time agreed upon by the carrier and shown on the carrier’s order for service and recorded on the bill of lading. If the mover promises you a pickup on a particular date or within a given period of days, it is required by the Commission’s regulations to exercise reasonable diligence in attempting to provide such pickup on that date or within the promised period. *196 This date or time period must be shown on the order for service which the mover is required to prepare prior to receipt of your shipment and which must be signed by you and by the carrier. A copy of this order shall be furnished you. You should make sure that the pickup date shown on the order for service is agreeable with you. If the mover is unable to make pickup on the date or during the period specified, the mover will promptly notify you, by telephone, telegraph, or in person, at his expense, of the date on which pickup can be made. The mover will repeat such notification if any subsequent date so assigned is not met. ’ ’ (Italics supplied.)
If there has been a violation of the rules and regulations of the I.C.C., then plaintiffs, if so advised, may pursue their remedies before that administrative body.
Motion to dismiss the complaint is granted.